UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILO USA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:12-cv-08088 |
| DESERT BOILERS & CONTROLS, | ) |
| INC., | ) Judge John W. Darrah |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Desert Boilers & Controls, Inc. ("Desert Boilers") filed a Motion to Dismiss for lack of personal jurisdiction and for improper venue or, alternatively, to transfer venue. Plaintiff Wilo USA, LLC ("Wilo") filed a Response, Desert Boilers filed a Reply, and Wilo was granted leave to and filed a Surreply.

## BACKGROUND

The following facts are taken from the Complaint and the submitted exhibits and affidavits. Plaintiff Wilo is a Delaware limited liability corporation licensed to do business in the state of Illinois. (Compl. ¶ 1.) Wilo manufactures and supplies water pumps and circulators for residential and industrial use. Wilo's corporate office is currently located in Rosemont, Illinois. (*Id.* ¶¶ 2-3.) From 2009 through September 2011, Wilo maintained its corporate office and warehouse in Melrose Park, Illinois. (Pl.'s Resp. Br., Exh. B. ¶ 5.) Wilo currently maintains a warehouse in Bolingbrook, Illinois. (*Id.* ¶ 6.) Wilo has a second office located in Georgia. (Pl.'s Resp. Br., Exh. A. ¶ 5.) Defendant Desert Boilers is a Nevada corporation with its principal office located in Las Vegas, Nevada, and is in the business of providing and servicing boilers. (Compl. ¶¶ 4-5.)

On or about March 18, 2010, Desert Boilers contacted Wilo to purchase boiler parts and issued a purchase order to Wilo for boiler parts. (*Id*. ¶ 11.) That purchase order is attached as Exhibit A to Wilo's Complaint. The purchase order is for the sale of a pump, identifies the vendor as Wilo USA LLC, with an address of Thomasville, Georgia, and states that it will be shipped to Desert Boilers at the following address: 305 West St. Louis Ave., Las Vegas, Nevada, 89102 (the "Las Vegas" address). (Compl. Exh. A.) Also, on or about March 18, 2010, Desert Boilers applied to be approved as a customer of Wilo and for a line of credit with Wilo. (Compl. ¶ 12.) As part of the application, Desert Boilers identified its address as the Las Vegas address, and provided Wilo with Desert Boilers's company information, Nevada Tax Resale number, bank account information and tax identification information. (Compl. Exh. B.)

Subsequently, Wilo approved Desert Boilers as a wholesale partner for Wilo parts and for a line of credit with Wilo in the amount of $5,000. (Compl. ¶ 14.) The "Wilo USA Partner Account Activation" document lists Wilo's Melrose Park, Illinois address at the bottom and top, and has Illinois telephone and facsimile numbers. (Comp. Exh. C.) The letter from Wilo to Desert Boilers regarding Desert Boilers's line of credit is from a Wilo employee at the Thomasville, Georgia address. (Compl. Exh. D.) Both documents are directed to Desert Boilers at its Las Vegas address.

Thereafter, Wilo would periodically receive purchase orders from Desert Boilers for boiler parts. (*Id.* ¶ 15.) Wilo invoiced and shipped these parts to Desert Boilers at its Las Vegas address, and the two parties agreed that Desert Boilers would remit payment for the goods within thirty days for each sale. (*Id.* ¶¶ 17-18.) As the invoices reflect, the goods were shipped and billed to Desert Boilers at its Las Vegas address, and payment was directed to Wilo at its Thomasville, Georgia address. (Compl. Exh. F.) The majority of the inventory for Desert

2

Boilers's orders was shipped from Wilo's warehouse in Melrose Park, Illinois, and Wilo has submitted a group exhibit of shipping labels that reflect the Illinois address. (Pl.'s Resp. Br., Exh. A, Exh. 1; Pl.'s Resp. Br., Exh. B. ¶ 12.)

During this time, Desert Boilers regularly communicated with Wilo's Illinois office on multiple occasions through e-mail and telephone conversations. (Pl.'s Resp. Br., Exh. A (Miller Aff.) ¶¶ 6-7).) Wilo's Director of Sales, Matthew Beasley, whose office is located in Illinois, stated in his affidavit that he was in regular telephone contact with Desert Boilers over a two-year period. (Pl.'s Resp. Br., Exh. B (Beasley Aff.) ¶¶ 8-10.) Furthermore, Beasley also often communicated with Desert Boilers through his work e-mail address, which has a signature block listing his office at Wilo's corporate headquarters in Illinois. (*Id.*)

Beginning July 1, 2011, Desert Boilers requested that Wilo refer to it as "West Coast Energy d/b/a Desert Boilers Inc." (Compl ¶ 19.) Accordingly, Wilo began writing "West Coast Energy d/b/a Desert Boilers Inc." or "West Coast Energy" on the order documentation. (*Id.* ¶ 20.) However, no other changes were made to the parties' agreement or order procedure, and Wilo continued to ship to and invoice Desert Boilers at its Las Vegas address. (*Id.* ¶ 21.) Wilo's July 15, 2011 shipping label reflects that Wilo shipped products from its Melrose Park, Illinois warehouse to "West Coast Energy, DBA Desert Boilers & Control Inc." at the same Las Vegas address. (Pl.'s Resp. Br., Exh. A, Exh. 1.)

On July 8, 2011, Wilo received an order for boiler parts costing $518,749.12 from Desert Boilers. (Compl. ¶¶ 24-25.) That order was sent by Desert Boilers employee, Eddie Salazar, to Beasley's work email, which, as discussed above, lists Beasley's office as being located in Illinois. (Pl. Br. Exh. B. ¶ 13.) Pursuant to that order, Wilo sent an order confirmation to "West Coast Energy DBA Desert Boilers & Controls Inc." at the Las Vegas address; that order

3

confirmation has Wilo's Thomasville, Georgia address at its top but identifies Wilo's corporate office in Melrose Park, Illinois in the footer. (Compl. Exh. F.) All products ordered by Desert Boilers on July 8, 2011 were filled and shipped from Wilo's Melrose Park, Illinois warehouse, which is reflected by the shipping labels. (Pl. Br. Exh. B. ¶ 15.)

For the July 8, 2011 order, Wilo and Desert Boilers agreed to special payment terms. Under that agreement, Desert Boilers could delay making payments until January 31, 2012, but had to make all repayments by April 30, 2012. (*Id.* ¶ 28.) Between July 15, 2011 and November 8, 2011, as the goods became available for shipment, Wilo invoiced Desert Boilers at its Las Vegas address. (Compl. Exh. I.) Desert Boilers's most recent order was made on February 16, 2012, and invoiced by Wilo on March 1, 2012. (Compl. ¶ 30.)

Wilo asserts that, to date, Desert Boilers owes $453,809.57 for goods that it has received from Wilo. (*Id.* ¶ 34.) Wilo has made multiple demands for payment to Desert Boilers, but Desert Boilers has refused to pay. On April 2, 2012, Harold A. Jacobsen, identified as the Chief Financial Officer for West Coast Energy Products, LLC, sent a letter to Wilo, addressed to Stefan Bline, at Wilo's Rosemont, Illinois address. In that letter, Jacobsen stated that Desert Boilers did not enter into an agreement with Wilo but, rather, that "West Coast Energy" entered into the agreement with Wilo and that any product purchased by West Coast Energy was purchased pursuant to a Representative Agreement. (Compl. Exh. K.) Jacobsen used the identical Las Vegas address (305 West St. Louis Avenue, Las Vegas, Nevada) as Desert Boilers used on its credit and partner application with Wilo. (*Id.*) That same Las Vegas address used by Jacobsen also appears on Desert Boilers's letterhead, as well as the invoices sent to Desert Boilers by Wilo.

**LEGAL STANDARD**

Desert Boilers moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), alleging lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Group, Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). When no evidentiary hearing is held, as is the case here, the plaintiff must only make a *prima facie* case of personal jurisdiction based on the submission of written materials. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Furthermore, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (internal citations and quotations omitted).

Additionally, Desert Boilers moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), alleging improper venue. Fed. R. Civ. P. 12(b)(3). When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *Moore v. AT&T Latin America Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001) (citing *First Health Group Corp. v. Sanderson Farms, Inc.*, No. 99 C 2926, 2000 WL 139474, at *2 (N.D. Ill. Jan. 31, 2000)). Factual conflicts are resolved in favor of the plaintiff, and the court may draw reasonable inferences from those facts. *Id*.

Alternatively, Desert Boilers requests that this case be transferred to the United States Court for the District of Nevada, pursuant to 28 U.S.C. § 1404(a). In ruling on a motion to transfer under § 1404(a), the movant bears the burden of establishing that the transferee forum is clearly more convenient, and the decision lies in the sound discretion of the trial judge. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The court may consider facts

presented by way of "affidavit, deposition, stipulation, or other relevant documents." *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983).

## ANALYSIS

### *Personal Jurisdiction*

A federal court sitting in diversity will have personal jurisdiction over a non-resident party if the forum state court would have jurisdiction over him. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). A non-resident defendant may be sued in Illinois if: (1) jurisdiction is authorized under the Illinois long-arm statute and (2) the defendant has minimum contacts with Illinois such that the exercise of jurisdiction would not violate due process. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990). Because the Illinois long-arm statute extends personal jurisdiction to the limits allowed under the Due Process Clause of the Fourteenth Amendment, the district court need only determine whether the exercise of personal jurisdiction in this case would be contrary to the United States Constitution. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002).

Personal jurisdiction may be exercised in accordance with due process if the defendant has sufficient "minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt Int't Corp.*, 302 F.3d at 716 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Such contacts must not be fortuitous. *Id.* Rather, the defendant must have purposely established minimum contacts with the forum state such that he "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Thus, the district court will determine if it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) (citing *Int'l Shoe*,

326 U.S. at 317). This is because "[p]otential defendants should have some control over – and certainly should not be surprised by – the jurisdictional consequences of their actions." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

Personal jurisdiction can be either general or specific. General jurisdiction exists where the defendant has "continuous and systematic" business contacts with the forum state, so that the defendant is subject to any action, regardless of whether the action is related to the defendant's contacts. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). The standard for general jurisdiction is quite high, *id*., and clearly does not apply in this case, as there has been no showing that Desert Boilers has systematic and continuous business contacts with Illinois. In contrast, specific jurisdiction requires that the defendant has "purposefully directed" his activities at the forum state, and the specific injury arises out of the defendant's forum-related activities. *Felland*, 682 F.3d at 673 (citing *Burger King Corp*, 471 U.S. at 472, and *Int'l Shoe*, 326 U.S. at 316).

Wilo argues that Desert Boilers has sufficient minimum contacts with Illinois to establish specific jurisdiction over Desert Boilers. Wilo asserts that Desert Boilers communicated with Wilo's Illinois office on multiple occasions through e-mail and telephone conversations. (Pl.'s Resp. at 5). According to his affidavit, Wilo's Controller, Miller, has reviewed and found numerous instances of correspondence between Wilo's Illinois office and Desert Boilers, including invoices or negotiations of terms of payment. (Pl.'s Resp. Exh. A. ¶¶ 6-7.) Likewise, Wilo's Director of Sales, Beasley, avers that he had numerous phone conversations with Desert Boilers from his phone number, which is registered to Wilo's corporate office in Illinois, and that Beasley communicated frequently with Desert Boilers through his e-mail address, which identifies Beasley's office as being in Illinois. (Pl.'s Resp. Exh. B. ¶¶ 8-11.) Wilo also has

7

submitted documents that show it shipped a majority of its products to Desert Boilers from Wilo's warehouse in Illinois.

In response, Desert Boilers argues that it transacted no business with Wilo's Illinois office that would support personal jurisdiction. Desert Boilers's argument focuses on its assertion that West Coast Energy, not Desert Boilers, was the contracting party for the July 8, 2011 order at the heart of Wilo's Complaint. (*See* Def.'s Reply Br. at pp. 2, 6.) Desert Boilers supports its argument with a declaration from Harold Jacobsen. Jacobsen addresses a multitude of communications and agreements with Wilo, where, for each communication, he either asserts that the communication was with Wilo's Georgia office, or he asserts that the communication was actually made by West Coast Energy. (Def.'s Reply Br., Exh. 1 (Jacobsen Aff.)). Desert Boilers also has submitted a declaration from Eddie Salazar, who states that he "did not place an 'order' on behalf of Desert Boilers . . . ." (Def.'s Reply Br., Exh. 2 (Salazar Aff.) ¶ 2.) Salazar also asserts that "all of [his] discussions with Wilo after July 8, 2011 were as an employee and representative of West Coast Energy Products." (*Id.* ¶ 3.)[1]

Desert Boilers also argues that "[t]his Court cannot take Wilo's facts as true because they are proven false by Desert Boilers affidavits." (Def.'s Reply at 10.) This is not the case. Desert Boilers' affidavits are averments by interested parties, as are Wilo's affidavits. However, Desert Boilers's affidavits are deficient in that it is not clear in what capacity Jacobsen and Salazar are employed. Specifically, those affiants purport to have extensive knowledge about the activities

---

[1] Wilo moved to strike portions of the Jacobsen and Salazar declarations on the basis that those declarations contain legal conclusions and statements lacking a basis in the affiants' personal knowledge. This Court denied Wilo's motion but took it under advisement. To the extent that Desert Boilers' declarations contain legal conclusions and lack foundation, those portions have been disregarded.

of both Desert Boilers and West Coast Energy, yet neither person, in his affidavit, identifies the title or the nature and capacity of his employment or, in the Jacobsen affidavit, the company where he is employed.[2] Desert Boilers has failed to adequately rebut Wilo's factual assertions that demonstrate that Desert Boilers repeatedly communicated with Wilo's Illinois office during the purchasing process and that Desert Boilers received shipments of products from Wilo's Illinois warehouse.

Furthermore, Desert Boilers's argument that Wilo has named the wrong party, and that West Coast was the actual contracting party, is not persuasive. In Count II of its Complaint, Wilo has pled a claim that, if Desert Boilers was not the actual contracting party, then Desert Boilers acted as an agent for an undisclosed principal, West Coast Energy. (Compl. Count II); *see, e.g., Valkenburg, K.-G. v. The S.S. Henry Denny*, 295 F.2d 330, 333 (7th Cir. 1961) (noting "the agency principle that an agent who executes a contract for an undisclosed principal becomes liable as a principal upon the contract"); Restatement (Third) of Agency § 6.02 (2006) ("When an agent acting with actual or apparent authority makes a contract on behalf of an unidentified principal, (1) the principal and the third party are parties to the contract; and (2) the agent is a party to the contract unless the agent and the third party agree otherwise."). Desert Boilers has failed to sufficiently rebut Wilo's allegations that West Coast Energy was an undisclosed principal of Desert Boilers for purposes of establishing jurisdiction based on Desert Boilers' potential liability in this regard. The actual relationship between Desert Boilers and West Coast Energy is a factual question to be resolved in later proceedings. At this time, the standard for a

---

[2] The Salazar affidavit seems to suggest a possible agency relationship, as Salazar states that his discussions with Wilo "were as an employee and representative of West Coast Energy Products." (Def.'s Reply Br., Exh. 2 ¶ 3.)

9

12(b)(2) motion requires any factual disputes that arise from conflicting affidavits be resolved in favor of Wilo. *See Purdue Research Found.*, 338 F.3d at 782.

Taken as true, Wilo's asserted facts establish that Desert Boilers had sufficient "minimum contacts" with the state of Illinois so as to establish specific jurisdiction, when Desert Boilers repeatedly communicated and negotiated with Wilo through Wilo's Illinois office and when Wilo shipped large amounts of its products from its Illinois warehouse to Desert Boilers and West Coast Energy d/b/a Desert Boilers. *See, e.g., Ben Kozloff, Inc. v. H & G Distributors, Inc.*, 717 F.Supp. 1336, 1338-39 (N.D. Ill. 1989) (where defendant regularly and intentionally conducted business with plaintiff by mail and telephone, defendant was subject to personal jurisdiction).

In light of the large numbers of communications and shipments between Desert Boilers and Wilo's Illinois office, Desert Boilers should have reasonably anticipated being haled into court in Illinois, and this result does not "offend traditional notions of fair play and substantial justice." *Hyatt Int'l Corp.*, 302 F.3d at 716. Desert Boilers' Motion to Dismiss based on lack of personal jurisdiction is therefore denied.

*Improper Venue*

In the alternative, Desert Boilers moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Wilo argues that the events giving rise to its claims occurred in Illinois and that venue is proper in this district.

28 U.S.C. § 1391, as amended in 2011, governs venue and permits a plaintiff to bring an action in the district where:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Thus, under 28 U.S.C. § 1391(b)(2), venue is proper where a "substantial part of the events or omissions giving rise to the claim" occurred in Illinois. "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *Truserv Corp. v. Neff,* 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998); *see also Czarnowski Display Services, Inc. v. Bell*, No. 03 C 5782, 2004 WL 1613553, at *8 (N.D. Ill. July 19, 2004) (same).

As discussed in more detail above, Wilo has demonstrated that Desert Boilers negotiated its orders with Wilo's Illinois sales agent, it communicated with Wilo through Wilo's Illinois office, and it received boiler parts at issue that were shipped from Wilo's Illinois warehouse. Thus, Wilo has demonstrated that a substantial portion of Wilo's claim occurred in Illinois, and venue is proper in this district.

*The Forum Selection Clause's Support of Jurisdiction and Venue*

Wilo also argues that Desert Boilers waived its objections to jurisdiction and venue based on a forum selection clause contained in Desert Boilers's credit line application with Wilo. The relevant language of the credit line application is as follows:

> "The undersigned further agrees that all issues and disputes relating to any credit arrangement extended hereunder shall be governed in accordance with a competent jurisdiction chosen at the discretion of Creditor, without reference to conflicts of laws principles."

11

(Compl., Ex. B, at 5.)

If and when the case involves a forum-selection clause, "such clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, (1972). "[S]ince a defendant is deemed to waive (that is, he forfeits) objections to personal jurisdiction or venue simply by not making them in timely fashion, a potential defendant can waive such objections in advance of suit by signing a forum selection clause." *IFC Credit Corp. v. Aliano Bros. Gen. Contrs., Inc.*, 437 F.3d 606, 610 (7th Cir. 2006).

In response, Desert Boilers repeats its argument that Wilo sent the goods at issue to West Coast Energy and claims that the forum selection clause applies only to Desert Boilers's orders placed before July 2011. (Reply Br. at 6.) Notably, Desert Boilers does not argue that the forum selection clause is not valid but, rather, just that it does not apply in this case. As discussed above, Wilo has sufficiently pled a claim that Desert Boilers acted as an agent for the undisclosed principal of West Coast Energy.

Because this clause is *prima facie* valid, it supports that this Court has personal jurisdiction over Desert Boilers and that venue is proper in this district.

*Motion to Transfer*

Finally, Desert Boilers moves to transfer venue to Nevada. Transfer is appropriate under 28 U.S.C. § 1404(a) where: (1) venue is proper in both the transferor and the transferee courts; (2) the transfer will serve the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. *See Coffey*, 796 F.2d at 219. The party seeking transfer bears the burden of establishing that the transferee court is clearly more convenient. *Id.* at 219-220.

Desert Boilers has made only a cursory argument that Nevada is "clearly more convenient" than Illinois (*see* Def.'s Br. at 10; Def.'s Reply Br. at 12) and does not address the statutory requirements of 28 U.S.C. § 1404(a). Conversely, Wilo's response supports a determination that this case should not be transferred from Illinois. First, as discussed above, venue is proper in this Court. Second, convenience of the parties does not weigh in favor of transfer to Nevada. Wilo states that its witnesses, Beasley, Miller, and Mark D'Agostino, work in Wilo's Illinois corporate office. Although Desert Boilers' employees may work in Nevada, shifting the inconvenience from one party to another is insufficient to justify transfer. *See, e.g., Moore*, 177 F. Supp. 2d at 789 ("the effect of a transfer cannot be a mere shift of inconveniences from one party to the other"); *Ameritech Mobile Commc'ns, Inc. v. Cellular Commc'ns Corp.*, 664 F. Supp. 1175, 1182 (N.D. Ill. 1987) ("the plaintiff's choice of forum should not be disturbed where transfer merely shifts rather than eliminates inconvenience to the parties"). Third, the interests of justice weigh against transfer because the parties are more likely to receive a speedy disposition of this action in the Northern District of Illinois, where civil cases, on average, progress more quickly to resolution than in the District of Nevada. *See* Admin. Office of the U.S. Courts, *Federal Court Management Statistics, September 2012*, http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2012/comparison-districts-within-circuit-september-2012.pdf&page=7.

Consequently, Desert Boilers has failed to carry its burden that transfer to Nevada is appropriate and its motion is denied.

## CONCLUSION

For the foregoing reasons, Desert Boilers's Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, or Alternatively, to Transfer Venue [12] is denied.

Date:___May 9, 2013_____       _____
                                        JOHN W. DARRAH
                                        United States District Court Judge